May it please the Court. I'm Pat O'Donnell, and I represent Han Young Kim of Seoul, South Korea. Your Honors, I'd like to reserve three minutes for rebuttal. Okay. Manage your own time. Thank you, Your Honor. There is a difference, Your Honors, between a foreigner and a fugitive. And while the inherent power of the Court allows the Court to disentitle a fugitive from calling upon the Court and making his claims in arguments, there is no foreigner or alien disentitlement doctrine. The decision below is erroneous for that reason. Han Young Kim. Good morning, Your Honors. On behalf of Mr. Thum, Devin Burstein. Your Honors, this case is a classic example of a round pin in a square hole. The evidence here showed that at most Mr. Thum walked an illegal alien a few feet from a Jack in the Box restaurant to a nearby waiting van. While that conduct may constitute the offense of attempted transportation, it doesn't show, even by a preponderance of the evidence, that Mr. Thum encouraged or induced the alien to reside here, to become a resident. Your Honors, the government alleged the wrong offense, and now they're asking this Court to water down the law in order to make a round peg fit in a square hole. And we would respectfully urge the Court to reject the government's request. Beginning with Lopez in Section 1324, and Judge Thomas and Judge Smith, I know you were both on the majority of that en banc panel. We know that 1324 codifies different discrete offenses to target, quote, different groups of wrongdoers. Lopez said, quote, 1324 creates separate offenses, and it said, again quoting, the construction of Section 1324, most consistent with the statute's history and structure, is one that recognizes that the different provisions of 1324 cover different groups of wrongdoers. In other words, each offense targets a different type of conduct. Now here, the government's argument that leading somebody to a van would constitute not transportation, but encouraging or inducing that person to reside, it collapses the distinction. And what Lopez said about that is, quote, again, such a rule would disregard Congress's intention to provide for the prosecution of different groups of wrongdoers under different provisions of the statute. And in fact, if it's taken to its logical conclusion, the government's argument makes every subsection of A1 in 1324 merely a subset of the encourages or reduces offense, because they all theoretically make it possible for an alien to reside here. Your Honor, we believe that this is a straightforward case where the government charged the wrong offense. I mean, if we look at the statute book, there are myriad offenses the government can charge, but under principles of due process and basic fairness, they have to choose the right one. Here, that didn't happen. And we would ask the court to vacate the revocation order and remand with an order that the petition be dismissed. If there are no further questions, I will... Very good. Thank you, Counsel. Thank you, Your Honors. Good morning, Your Honors. May it please the court. Ryan Saucedo for the United States of America. This court shall affirm. District Court properly calculated that Mr. Thume violated a supervised release. Judge Sabra, sitting as the trier of fact after hearing all the evidence and weighing the testimony and calculating the credibility of the witnesses found, that it was more likely than not when Mr. Thume, by his own admissions, agreed to help a friend, an alien smuggler by the name of Chaplin, guide an escort, an alien from a jack-in-the-box to a van that would take him to Northern California, that he had encouraged and increased his ability to reside here within the United States. Counsel, isn't your opposing counsel correct when he says, I'm paraphrasing, that in effect you're turning Lopez on its head? You just misread. Somebody should have decided it's something different and you'd have been just fine, but you didn't do that. So now you're asking us to take the teaching of Lopez over the body of Yoshida, which doesn't fit, and make it work for you. How can we do that? Your Honor, the government's position is consistent with Lopez. It is our position that we are consistent with Lopez. Lopez, and I quote the majority opinion at 1191, said that the crux of our case is our determination, our determination of when it brings to offense terminates. In that case, Angelica Lopez had been convicted under an aiding and abetting theory of bringing to. And those are two separate crimes, 1324A2, the brings to offense, and 1324A1. The court was distinguishing between those two offenses. And in the opinion, goes on to say that there are four separate offenses under 1324A1. But what how do you distinguish? In this case, basically what you're saying is that any time someone transports an alien with the United States, they're encouraging him. The government is not saying that any time somebody transports them, they would encourage them. Here, the government's position is that this conduct may satisfy more subsections than A1. And as the Court is aware, the evolution of Section 1324, it's a very it's been, the immigration, the purpose has been to expand the conduct that would fall under the purview of Section 1324. Lopez goes on to discuss in both the majority and the dissent that the overarching purpose of the amendments of 1324 over the years is to encapsulate more conduct. Well, that may be true, but you still have to plead it. The defendant still has to know what he or she is charged with. And as my colleague has pointed out, it seems like the government's only position here is that if you do any of these things, you encourage whatever you want within the grander section. That can't be. This is a criminal statute. This is not a civil statute. That is correct, Your Honor. Here we were at a revocation hearing and the petition for violation of supervisory lease filed by the United States Probation Officer in this case alleged a very specific statute that the Court ultimately found. But is there any evidence, unless you elide that there is encouragement, how do you get from what was charged to what was done? Is there evidence to support what was allegedly done here? Yes, by Mr. Thune's own admissions. In this Court in United States v. Yoshida, in that case, the defendant had escorted or led or assisted three illegal aliens on their last trip from Japan. But Yoshida, with respect, counsel, you talk about two different offenses and there was sufficient evidence to corroborate both. What I'm struggling with here is I don't find sufficient evidence to back up the one you charged. So unless there is a way to take what was lost on it and spin it into what you did charge, I don't know how you make your case here. Mr. Thune, by his own admissions, when he had agreed to assist his friend who he refers to as Chaplain or Puerero, which is a term used to synonymous with alien smuggler, when he agreed to help go into the Jack in the Box, bring him back to the van that would take him to Northern California, knowing what Mr. Thune knows, this was not his first alien smuggling offense he's been charged with. He has four prior transportation cases and he is aware to the extent, so aware, that he knew the ramifications of his actions. He told his friend, Chaplain, that he would not drive because he was on probation. He was aware that he was on supervised release and he would not drive the illegal alien with inducing or encouraging an illegal alien to reside in the United States. Transportation? Hey, I get that. That's a separate subsection. What evidence is there that shows that Mr. Thune encouraged this other man to reside in the United States? Your Honor, the government would submit that by him willing to provide assistance. I don't get that. Your Honor, there are going to be situations where the evidence that Mr. Thune    indicates in the conduct by the appellant will satisfy multiple subsections of Section 1327. Well, let's say that's your Yoshida case, but I don't think it's this case unless you can show me what the evidence is that this defendant encouraged or induced this particular alien to reside in the United States. What evidence is there that he did that? Again, to reiterate, the standard here is a preponderance. But you have to prove something by whatever the quantity of evidence there is. And I'm saying what evidence is there specifically that this defendant intended to encourage the alien to reside in the United States? It's different than transportation. It's residing we're talking about. What did he do? The fact that he agreed to help, arguably, is the second most critical point. So the illegal alien here had entered the United States by presenting a border crossing card that did not belong to him. Going to the jack-in-the-box. Arguably the second most critical point. It's within a football field's length at the port by Mr. Fume and his own admissions going in to help him to get to Northern California. But did he, you keep referencing the defendant's admissions and his agreement to help. Did he agree, to get to Judge Smith's question, did he ever admit that he agreed to do anything other than get a person from jack-in-the-box to the van, from point A to point B? No, but he did so with the knowledge that the illegal alien would be transported up to Northern California. And I believe the courts. And maybe Canada. And maybe Canada. Words of the residents come in. Usually you kind of think encouraged to reside. You see a real estate ad. Sunny California. Come here. It's a beautiful place to live. That's not what happened here. So what do you have besides taking him from the jack-in-the-box to the van? It's nothing. He didn't say, boy, you're going to really love it here. Again, here it is more likely than not that when someone goes through the steps that the illegal alien went through, that they're coming here to reside. As this court pointed out in U.S. v. Seen, as the briefing points out, the case law is very sparse with this very specific statute. The courts in other circuits, 11th and the Fourth Circuit, respectively, have found that there does not need to be a temporal connection with residents. There doesn't need to be a place of residence that is discussed. In those two cases, one was it involved the issuance of fraudulent Social Security numbers and other immigration documents. There was no discussion in the factual record or at the appellate level that there was any discussion about what residence or where he was going to reside. Those opinions came down on the fact that just by the actions of the defendant or appellant, their ability to reside increased exponentially, which is what happened here. But those two cases actually don't help you, do they? I mean, as I read them, I don't know how to pronounce this, N-D-I-A-Y-E, the 11th Circuit case and O-L-O-Y-E-D-E, the Fourth Circuit case, seem to me to go against your position. The government would contend that they actually were consistent with those opinions. They found that the encouragement was found and was sufficient, again, on the reasonable doubt standard that just by helping the individuals, by giving them the fraudulent Social Security numbers and also the other immigration documents, went on to further explain that the inference that can be drawn is that it increases their ability to reside. Again, there was no discussion in either of those cases that they had to say or the appellant had to be aware of where they were ultimately going to go. Here we have that information. Ultimately, we're left with the perplexing idea that encouraging someone to go to jack-in-the-box will make them want to stay in the United States. He's getting out of the chair. I was going to say, it's the exit. It's the exit. Your Honor, I see my time is just coming up. I would just, Your Honor, ask that the Court affirm that this was a preponderant standard and by Mr. O'Toole's own admissions he helped Mr. Alderbarg-Reeders reside here in the United States. Thank you, Counsel. Any further questions? Okay. Thank you very much. Thank you both for your arguments. The case just heard will be submitted for decision.
judges: Thomas, Smith, Christen